# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| TEXAS TOP COP SHOP, INC., ET AL., § § *Plaintiffs,* § § v. § § MERRICK GARLAND, ATTORNEY § GENERAL OF THE UNITED STATES, § ET AL., § § *Defendants.* § | Civil Action No. 4:24-CV-478 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Stay Preliminary Injunction Pending Appeal (Dkt. #35). Having considered the Motion, the pleadings, and the applicable law, the Court concludes that the Motion should be **DENIED.**

### BACKGROUND

On May 28, 2024, Plaintiffs filed suit against Defendants, various representatives of the Federal Government and Government entities (collectively, "the Government"), seeking a declaratory judgment that the Corporate Transparency Act ("CTA") and its implementing regulations (the "Reporting Rule") are unconstitutional and an injunction against their enforcement (Dkt. #1). On June 3, 2024, Plaintiffs sought a preliminary injunction against the CTA and Reporting Rule (Dkt. #6). The Government filed a Response (Dkt. #18), Plaintiffs replied (Dkt. #19), and on October 9, 2024, the Court held a hearing on the matter. On December 3, 2024, the Court entered an Order enjoining enforcement of the CTA and Reporting Rule nationwide (Dkt. #30). The Government appealed (Dkt. #32). The Court amended its Order to correct a

minor error that did not impact the Court's analysis or holding (Dkt. #33). The Government filed an Amended Notice of Appeal (Dkt. #34).

At 8:05 p.m. CST on December 11, 2024, the Government filed the instant Motion to Stay Preliminary Injunction Pending Appeal (Dkt. #35). In the Motion, the Government asserted that if the Court did not grant a stay of its Order enjoining the CTA and Reporting Rule by December 12 or 13, 2024, the Government would move for a stay of the Order in the Fifth Circuit Court of Appeals (Dkt. #35 at p. 1). Because Plaintiffs had not yet had an opportunity to file a response, the Court Ordered Plaintiffs to respond to the Government's Motion by December 16, 2024, at 12:00 p.m. CST (Dkt. #36). On December 13, 2024, the Government filed a Motion to stay the Court's Order enjoining enforcement of the CTA and Reporting Rule in the Fifth Circuit Court of Appeals. Defendants-Appellants' Emergency Motion for Stay Pending Appeal, *Texas Top Cop Shop v. Garland*, No. 24-40792 (5th Cir. Dec. 13, 2024), ECF No. 21. On December 16, 2024, at 8:08 a.m. CST, Plaintiffs timely filed their Response in Opposition to the Government's Motion to Stay Preliminary Injunction (Dkt. #37). On December 17, 2024, the Government filed its Reply (Dkt. #38). The Court now takes up the Government's Motion (Dkt. #35).

## LEGAL STANDARD

"A stay pending appeal is extraordinary relief for which [the movant] bear[s] a heavy burden." *Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362, 372 (5th Cir. 2023) (internal quotations omitted). "A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotations omitted). A stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the

circumstances of the particular case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34 (internal quotations omitted). Where "there is even a fair possibility that the stay . . . will work damage to someone else[,]" the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. at 248, 255 (1936); *see Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009) (internal quotations omitted) ("'A stay is not a matter of right, even if irreparable injury might otherwise result.' It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'").

In determining whether to grant a stay, district courts must consider four factors (known in the Fifth Circuit as the "*Nken* factors"): "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Plaquemines Par.*, 84 F.4th at 373 (quoting *Nken*, 556 U.S. at 434). The Supreme Court and Fifth Circuit alike have made clear that "'[t]he first two factors . . . are the most critical.'" *Id.* (quoting *Nken*, 556 U.S. at 434). In articulating this standard, the Fifth Circuit has stated that it is "important[]" to recall that:

> on motions for stay pending appeal the movant need not always show a "probability" of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities ***weighs heavily*** in favor of granting the stay.

*Id.* (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A 1981)). With these principles in mind, the Court addresses each factor in turn.

3

## ANALYSIS

### I. Likelihood of Success on the Merits

As the Court has acknowledged, this case involves a novel constitutional question of first impression in the Fifth Circuit (Dkt. #33 at p. 3). Though Plaintiffs brought an array of challenges against the CTA and Reporting Rule, to date, the Court has only addressed Plaintiffs' argument that the CTA exceeds Congress's enumerated powers (Dkt. #33 at p. 79). As discussed in detail by the Court's Order enjoining the CTA and Reporting Rule (Dkt. #33), both are likely unconstitutional; Plaintiffs have thus carried their burden to show a substantial likelihood of success on the merits. The Government has not.

The Government urges that the Court reconsider its conclusion on the merits but reiterates arguments that the Court has already rejected. For example, in the context of the Commerce Clause, the Government has still not articulated what *activity* the CTA regulates (*See* Dkt. #35 at p. 6). Similarly, in the context of the Necessary and Proper clause, the Government has yet to offer a viable argument that the CTA derives from one of Congress's enumerated powers and is a proper exercise of that power, as it must (*See* Dkt. #35). *See United States v. Comstock*, 560 U.S. 126, 147 (2010). Broadly, the Government has not offered any tenable explanation for how the CTA and Reporting Rule align with our dual system of government. The Government also argues that the Court did not apply the proper standard for a facial challenge (Dkt. #35 at p. 6). But at this juncture, there appears "no set of circumstances" under our written Constitution in which Congress would have the power to enact the CTA. *See United States v. Salerno*, 481 U.S. 739, 745 (1987).

The Government further argues that the Court erred in "not giv[ing] sufficient weight" to Congress's findings (Dkt. #35 at p. 7). But the Government does not cite any authority for the notion that Congress's findings alone may authorize it to legislate however it so wishes. In fact,

4

countless cases discussing Congress's constitutional limits provide the exact opposite. *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 614 (2000) ("[T]he existence of congressional findings is not sufficient, by itself, to sustain the constitutionality of Commerce Clause legislation.") (quoting *United States v. Lopez*, 514 U.S. 549, 557 n.2 ("Simply because Congress may conclude that a particular activity substantially affects interstate commerce does not make it so.")). The Court gave Congress its due deference but acted as it must to fulfill its judicial responsibility.

Further, while the Government contends that the Court erred simply because it disagreed with the reasoning in *Firestone v. Yellen*, No. 3:24-cv-1034-SI, 2024 WL 4250192 (D. Or. Sept. 20, 2024) and *Cmty. Ass'ns Inst. v. Yellen*, No. 1:24-cv-1597, 2024 WL 4571412 (E.D. Va. Oct. 24, 2024), the Government overlooks the reasoning in *Nat'l Small Bus. United v. Yellen*, 721 F. Supp. 3d 1260 (N.D. Ala. 2024) ("*NSBU v. Yellen*"). The Court believes that the reasoning in *NSBU v. Yellen* is persuasive and correct. This disagreement among the district courts is not enough to suggest that this Court erred.

The Government finally submits that the Court erred in enjoining the CTA and Reporting Rule nationwide (Dkt. #35 at pp. 7–8). Once more, the Court stands behind its Order (Dkt. #33). The Government is right to point out the concerns with nationwide injunctions (*See* Dkt. #35 at p. 7). The Court acknowledges those concerns. The Court enjoined enforcement of the CTA and Reporting Rule nationwide because it appears appropriate under the law and the facts of this case.[1] The Government's Reply argues that "Defendants did not concede that [nationwide] relief was

---

[1] Ironically, the Declaration the Government filed in support of its Motion shows why anything short of nationwide relief would be impracticable. Though, of course, the scope of an injunction does not turn on practicalities alone. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). The Declaration of Andrea Gacki states that "[r]eporting companies must clearly understand and have certainty about their compliance obligations for a reporting regime to be effective" (Dkt. #35-1 at p. 9). After all, the AMLA sought "to establish *uniform* beneficial ownership information reporting requirements." Pub. L. No. 116-283, div. F. 134 Stat. 4547, § 6002(5) (2021) (emphasis added).

necessary or appropriate" (Dkt. #38 at p. 1). The Court agrees, which is why the Court did not categorize the Government's statement that enjoining enforcement of the CTA and Reporting Rule only against Plaintiffs, including NFIB's members, was "'effectively' a form of nationwide relief" as a concession (Dkt. #38 at p. 1–2; Dkt. #33 at p. 75). This does not change the practical effect of Plaintiffs' request, nor does it persuade the Court that the scope of the injunction is inappropriate under the facts and circumstances of this case.

As the Court has decided, the merits favored Plaintiffs when the Court issued its injunction. Today is no different. The Government has not "made a strong showing that [it] is likely to succeed on the merits." *See Plaquemines Par.*, 84 F.4th at 373. Accordingly, the first *Nken* factor weighs against issuance of a stay.

## II.     The Equities

Turning to the remaining factors (the "equities"), the Court determines that a stay is not warranted. As the Court has concluded and as precedent indicates, the public interest lies in protecting the public from laws that are likely unconstitutional, and Plaintiffs will face irreparable harm if the Court were to grant a stay (which would effectively nullify its prior Order) (*See* Dkt. #33). Thus, the third and fourth *Nken* factors weigh against issuance of a stay.

Accordingly, the Court turns to the Second *Nken* factor—the risk of the Government suffering irreparable harm (the only remaining factor). *Plaquemines Par.*, 84 F.4th at 373. The Government contends that the burdens that it has undertaken to achieve compliance with the CTA constitute irreparable injury if the Court does not permit the CTA and Reporting Rule to become effective once again by issuing a stay. The Government advances two broad arguments under this factor. First, the Government argues that an injunction against laws "enacted by representatives of [the] people" constitutes irreparable harm (Dkt. #35 at p. 3) (internal quotation omitted).

6

Indeed, as the Fifth Circuit has stated, "[w]hen a statute is enjoined, the [Government] necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024).

Second, the Government argues that "the injunction would significantly disrupt FinCEN's implementation of the CTA, and FinCEN would not be able to fully remediate that disruption even if the injunction were lifted at the conclusion of the appeal" (Dkt. #35 at p. 3). In support of this point, the Government notes that FinCEN has engaged in nationwide media outreach in an attempt to achieve compliance with the CTA and it has expended $4.3 million dollars to date in furtherance of those efforts (Dkt. #35 at p. 4). The Government also argues that the injunction would "prevent the United States from fulfilling international standards for countering money laundering and terrorist financing" (Dkt. #35 at p. 5). That is a familiar argument that the Court addressed in its Order (*See* Dkt. #33 at pp. 56–65).

But for the first time in the life of this case, the Government has offered more than a threadbare claim that the CTA helps the United States comply with international standards. The Declaration of Andrea Gacki, the Director of FinCEN, which the Government attached as an exhibit to its Motion to Stay states:

> The United States is currently preparing for its upcoming Financial Action Task Force ("FATF") mutual evaluation, with its written technical submission currently due mid-2025. The United States is a founding member of FATF, which is the leading international, inter-governmental task force whose purpose is the development and promotion of international standards and the effective implementation of legal, regulatory, and operational measures to combat money laundering, terrorist financing, the financing of proliferation, and other related threats to the integrity of the international financial system. Among other things, FATF has established standards on transparency and BOI [(Beneficial Ownership Information)] of legal persons, intended to deter and prevent the misuse of corporate vehicles.

(Dkt. #35-1 at pp. 9–10). The Declaration also states that FATF rated the United States "non-compliant" with FATF's "requirements" (Dkt. #35-1 at p. 10). According to Andrea Gacki's Declaration, the injunction "risks causing the United States to receive negative ratings on related portions of an upcoming FATF evaluation" (Dkt. #35-1 at p. 10). A lower rating, according to the Declaration, could result in the United States being "added to the FATF grey list, a public list of countries with significant failings in their AML/CFT [(anti-money laundering and countering the financing of terrorism)] regimes" (Dkt. #35-1 at p. 10). That, the Declaration argues, "would undermine the United States' ability to push other countries to make reforms to their AML/CFT regimes . . ." (Dkt. #35-1 at p. 10). Finally, the Declaration notes that, for "nearly a decade," FATF has identified the lack of BOI reporting as the "most fundamental gap" in the United States's AML/CFT regime (Dkt. #35-1 at p. 10). Though Plaintiffs did not stipulate to the factual contentions in the Declaration, their Response does not dispute those statements.

    The efforts that FinCEN has made to increase compliance with the CTA since the Reporting Rule have gone into effect appear to be significant by their terms and, of course, in service of a laudable end. FinCEN has been collecting BOI reports since January 1, 2024 (Dkt. #35-1 at p. 5). And while Plaintiffs have not provided the Court with any reason to suggest that the Government could completely remediate any harm as a result of the injunction, the law is clear that "it is always in the public interest to prevent a violation of a party's constitutional rights." *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)), *overruled on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). Moreover, irreparable injury is not dispositive in deciding whether to grant a stay. *Ind. State Police Pension Tr.*, 556 U.S at 961. Accordingly, any interest the

8

Government has in preserving its efforts in furtherance of the CTA are superseded by the CTA's grave constitutional flaws. Thus, on balance, the factors do not favor issuance of a stay.

Notwithstanding this four-factor analysis, the Court is mindful of the Fifth Circuit's statement in *Ruiz v. Estelle* that, at this stage, the movant "need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities ***weighs heavily*** in favor of granting the stay." *Plaquemines Par.*, 84 F.4th at 373 (quoting *Ruiz*, 650 F.2d at 565). This case, no doubt, presents a serious legal question. Given the Court's prior reasoning (Dkt. #33), it does not appear that the Government has a "substantial case on the merits," at least as to Plaintiffs' enumerated powers challenge. But even assuming *arguendo* that the Government does have a substantial case on the merits, the equities here do not "weigh heavily" in favor of granting a stay. *See id.* Accordingly, the Court will not stay its Order enjoining enforcement of the CTA and Reporting Rule (Dkt. #33).

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Stay Preliminary Injunction Pending Appeal (Dkt. #35) is hereby **DENIED.**

**IT IS SO ORDERED.**

SIGNED this 17th day of December, 2024.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE